ALEXANDER GORR, Plaintiff-Appellee, v. BOARD OF FIRE AND PO-LICE COMMISSIONERS OF THE VILLAGE OF ADDISON, *et al.,* Defendants-Appellants.

Second District   No. 2—85—0204

Opinion filed June 24, 1986.

Stephen J. Culliton, of Civinelli, Bakalis & Culliton, of Bloomingdale, for appellant.

Wayne B. Giampietro and Gregory N. Freerksen, both of DeJong, Poltrock & Giampietro, of Chicago, for appellee.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Defendant, the board of fire and police commissioners of the village of Addison (board), appeals from an order of the circuit court which, on administrative review, reversed the board's order discharging plaintiff, Alexander Gorr, from his employment as a police officer by the village of Addison. Defendant board contends that the court erred in finding (1) that the board lacked jurisdiction to discharge the plaintiff; (2) that the charges were insufficient; (3) that the board's decision was against the manifest weight of the evidence; (4) that there was no cause for dismissal; and (5) that the board should have held a hearing of plaintiff's motion to excuse commissioner Robert Martinez for cause.

On November 8, 1983, members of the board of trustees of the village of Addison (village trustees) filed charges against the plaintiff before the board which, in substance, stated that while plaintiff was chief of police of the Addison police department: (1) on September 21, 1983, he heard a loud bang in the police station and failed to determine whether it was caused by the discharge of a firearm and then failed to take corrective action; (2) on October 10, 1983, at 3:45 p.m., he knew that Sergeant Guy Hoffrage was planning to point a pistol loaded with a blank cartridge at an individual in the police station and did not forbid or prevent this act but aided and abetted it by instructing Hoffrage to alert the communications division; and (3) as to both incidents he failed to take proper police action and file reports as required by departmental procedures.

In January 1984, prior to a hearing of the charges by the board, plaintiff's appointed term as chief of police expired and the village trustees voted against his reappointment, whereupon plaintiff reverted to his prior rank of captain. Plaintiff thereupon moved to dismiss the pending charges on grounds the board lacked jurisdiction to entertain any charges pertaining to his conduct and duties as chief. The board denied plaintiff's motion and held evidentiary hearings on March 10, 27 and 28.

Witnesses testified that on September 21, 1983, at about 4 p.m., after the filming of a training exercise involving the use of blank ammunition, a loud bang occurred at the Addison police station. Plaintiff, who was in his office, heard the bang and ordered all officers to report to the communications area. On his way there, plaintiff was joined by Lieutenants Gendusa and Tyndall. Tyndall, who was commander of detectives, told plaintiff that one of his men had been "goofing around" and that he would handle it. Plaintiff told Tyndall that he had better do so, and returned to his office.

Detective Gorniak testified that on September 21, 1983, he saw Detective Hayden fire a blank round of ammunition at the floor. He heard plaintiff page all officers on the public address system, and saw plaintiff and Lieutenants Tyndall and Gendusa laughing outside the detectives' office.

Plaintiff testified he did not know that a blank round had been fired on September 21 and therefore did not make any further inquiry; that he relied upon the lieutenants to take care of matters involving the men under their authority.

On Monday, October 10, 1983, Timothy Bryers, a reporter for the Addison Press newspaper received injuries when Addison police Sergeant Guy Hoffrage fired a blank cartridge at him as a prank in the detectives' room of the police station. Bryers was assigned by his employer to cover the police department, and was engaged in a running joke with Hoffrage and Gorniak to the effect that if Bryers did not deliver the newspaper containing the account of an arrest made recently by the officers he would not get any more news stories from them. During the course of the joke, Hoffrage pointed his revolver at Bryers and said, "We want our newspapers delivered, damn it," and fired his weapon, which was loaded with a blank round of ammunition.

Bryers received powder burns on his wrist and hand from the discharge of the blank cartridge and blood appeared from pin-prick wounds caused by the discharge. Immediately after the shot, plaintiff asked Bryers if he needed medical attention and offered to call the paramedics but Bryers declined, indicating that he would take care of it himself.

Prior to firing the blank round, Hoffrage told the plaintiff, "I am going to fire a blank at Tim." Plaintiff testified that he thought Hoffrage meant Officer Tim Hayden, not Tim Bryers, and he instructed Hoffrage that he should notify the communications desk first. After the shooting, plaintiff questioned Bryers, Hoffrage and Gorniak regarding it, and on October 11, he spoke to Hoffrage and Gorniak about the incident. That evening, plaintiff advised three of the village trustees and the village president of the incident and told them they would receive a report which he was preparing.

On October 12, plaintiff attempted to discuss the incident again with Bryers, but Bryers declined to answer any additional questions. Plaintiff tested Hoffrage's gun at the shooting range and discussed possible disciplinary action with the village attorney. On October 13, plaintiff imposed a five-day suspension on Hoffrage and a three-day suspension on Gorniak. Both officers were also required to pay Bry-

ers' medical bills and to prepare a video tape on the duty of an officer to refrain from engaging in pranks. On October 14, plaintiff's 16-page report of the incident was completed and submitted to the village trustees.

After the hearing, the board found cause for disciplinary action in that plaintiff violated police department Rule 3.2 (performance of duty) and Rule 3.3 (obedience to laws and regulations), and it discharged plaintiff from his employment as a police officer.

Plaintiff thereafter sought administrative review in the circuit court which reversed the board's decision and the board appeals.

The board contends that the circuit court erred in finding that the board lacked jurisdiction over the plaintiff. In its memorandum of decision, the court found:

"the Board of Police Commissioners of the Village of Addison had no jurisdiction to entertain charges against Plaintiff *as Police Chief* because the allegations contained in the charges were predicated solely upon his administrative duties as Chief of Police." (Emphasis in original.)

The shooting incidents upon which the charges were based took place in September and October 1983, at which time plaintiff held the position of chief of police, and the charges were directed to plaintiff's conduct and duties as chief. On November 7, 1983, when plaintiff was still police chief, the charges were filed with the board. The record of proceedings before the board discloses that on January 3, 1984, the village board of trustees had voted not to reappoint plaintiff as chief expressly because of his involvement in the shooting incidents and, as a result, plaintiff reverted to the rank of captain. In March, the board held its hearings on the charges, over plaintiff's objection that the board lacked jurisdiction to consider charges brought against him as chief of police.

Section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 10—2.1—17) determines which administrative body has disciplinary authority over a chief of police:

"If the chief of fire department or the chief of the police department or both of them are appointed in the manner provided by ordinance, they may be removed or discharged by the appointing authority. ***" (Ill. Rev. Stat. 1983, ch. 25, par. 10—2.1—17.)

Section 14—10 of the Addison Village Code specifically prohibits the board of fire and police commissioners from hearing charges brought against a chief of police. It provides:

"The Board of police commissioners shall make all necessary

rules and regulations and shall make all appointments and removals, except those of chief of police and assistant chief of police, and shall have such other and further powers as are contained in Ch. 24, Art. 10, Div. 2.1 of the Illinois Revised Statutes." Addison, Ill., Village Code sec. 14—10.

The board argues that whatever action the village trustees took against plaintiff as chief of police left intact the board's authority to discharge plaintiff as a member of the department, relying on *Edwards v. City of Marion* (1970), 130 Ill. App. 2d 895, 266 N.E.2d 491, *appeal denied* (1971), 46 Ill. 2d 593. Although the court in *Edwards* held that the chief of police is also a member of the police department, it did not authorize the city to exercise the powers of discharge conferred on the board of fire and police commissioners by statute. In the present case, plaintiff was appointed as chief of police by the village board of trustees pursuant to sections 2—53 to 2—55 of the Addison Village Code. Thus, only the board of trustees could remove or discharge the chief of police, and it did so in voting against plaintiff's reappointment as chief of police because of his involvement in the shooting incidents. The charges subsequently considered by the board were predicated entirely upon plaintiff's lapse of his supervisory duty as chief of police and did not relate to any conduct by him in any other capacity. We note that the village attorney sought to amend the charges before the board prior to the hearing to meet that problem, but was not permitted to do so by the board.

We agree with the conclusion of the circuit court that the board lacked authority to discharge plaintiff on the basis of the charges brought against him as chief of police and its judgment will be affirmed. As resolution of this issue is dispositive, we need not consider defendant's other assignments of error.

Affirmed.

HOPF and UNVERZAGT, JJ., concur.